IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                           DALLAS DIVISION

BARBARA BROWN,                     §
                                   §
                Plaintiff,         §
                                   § Civil Action No. 3:08-CV-0255-D
VS.                                §
                                   §
MICHAEL J. ASTRUE, COMMISSIONER    §
OF THE SOCIAL SECURITY             §
ADMINISTRATION,                    §
                                   §
                Defendant.         §

                        MEMORANDUM OPINION

    Plaintiff Barbara Brown ("Brown") brings this action under §§ 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. For the reasons that follow, the decision is affirmed.

                                I

    Brown is a 58-year-old with an eleventh-grade education. She has been previously employed as a housekeeper, laundry worker, and cafeteria worker. Brown applied for disability benefits on November 4, 2005, alleging that she became disabled on November 3, 2005 due to poor circulation in her legs and feet, a broken tail bone, two crushed vertebrae in her back, diabetes, thyroid problems, acid reflux, and an ulcer. She maintains that these medical problems and the resulting pain prevent her from standing

or walking for long periods of time.

The Commissioner denied Brown's application initially and on reconsideration, and Brown requested a hearing. At the hearing, the Administrative Law Judge ("ALJ") concluded that Brown was not disabled. The ALJ determined at step two of the sequential evaluation process that Brown suffered the following severe impairments: degenerative disc disease, diabetes mellitus, mild degenerative joint disease of the right knee, affective mood disorder, and polysubstance abuse. He found at step three that Brown's polysubstance abuse met an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listing-level impairment"). He further found that Brown did not have an impairment or combination of impairments that met or medically equaled a listing-level impairment when her polysubstance abuse was not considered. At step four, the ALJ assessed Brown's residual functional capacity ("RFC"):

> [Brown] has the [RFC] to lift 10 pounds frequently and 20 pounds occasionally. She can sit for 6 hours of an 8 hour day and she can stand or walk for 6 hours of an 8 hour day. [Brown] can never climb ladders, ropes or scaffolds and she is limited to occasional stooping, kneeling, crouching and crawling. [Brown] can understand, remember, and follow simple instructions and complete simple repetitive tasks. She is further limited to only incidental public contact.

R. 25. Based on this finding regarding Brown's RFC, the ALJ concluded that Brown was not disabled because she could perform her

past relevant work as a housekeeper and a laundry folder, which he found she had performed at the light exertional level.[1]  Brown sought review by the Appeals Council, which denied her request. Brown now seeks judicial review.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).  "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]."

---

[1] Regulations under the Act classify a particular job according to its exertional level: sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567 (2008).  The level corresponds to the job's "strength demands" in seven areas: sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. § 404.1569a(a).  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id*. § 404.1567(b).  Light work may also require "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  *Id*.

*Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment

or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)( A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2008). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record

or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)( A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2008). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record

considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*. Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*. The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

### III

Brown maintains that the ALJ's decision should be reversed for two reasons. First, the ALJ's finding that she can still perform her past relevant work is not supported by substantial evidence. Second, the ALJ's RFC assessment is not supported by substantial evidence.

A

The court first considers the ALJ's RFC assessment because he properly relied on it to decide that Brown could still perform her past relevant work. *See* 20 C.F.R. § 404.1545(a)(5)(i) (2008).

1

RFC refers to the most that a claimant is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a). Assessing RFC involves an evaluation of the limitations on the claimant's work-related abilities imposed by all of her medically determinable impairments, including non-severe impairments, and their related symptoms. *See id.* § 404.1545(a), (b). Obesity is a medically determinable impairment that the ALJ must consider in assessing a claimant's RFC. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(Q) (2008); *Policy Interpretation Ruling: Titles II and XVI: Evaluation of Obesity*, SSR 02-01p, 2000 WL 628049, at *6-7 (S.S.A. 2002) ("*Obesity Ruling*"). Specifically, the ALJ must take into account the "additional and cumulative effects" of obesity combined with other impairments, which "can be greater than the effects of each of the impairments considered separately." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(Q).

2

Brown maintains that when the ALJ assessed her RFC, he failed to consider the cumulative effects of her obesity. Brown posits that when her obesity is considered in conjunction with her other

impairments and their associated pain, she only has the RFC to stand and walk for fewer than two hours of an eight-hour day. With this limitation, she would not be able to perform light work.[2] *See* 20 C.F.R. § 404.1567(b) (2008).

The Commissioner counters that the ALJ's RFC determination includes all of the limitations supported by the record. He contends that the evidence indicates that Brown's impairments did not prevent her from performing light work. Implicit in the Commissioner's argument is the premise that the ALJ indirectly considered Brown's obesity when he evaluated the effects of her other impairments.

---

[2]Although the heading of the pertinent part of Brown's brief refers to the ALJ's RFC determination, which is made at step four of the sequential evaluation process, she appears to argue in this part's last paragraph that the ALJ erred at step two by not finding her obesity to be a severe impairment. Although Brown states that the "medical records indicate" that her obesity is a severe impairment, *see* P. Br. 15, she does not point to any specific evidence that shows that her obesity caused significant limitations on her work-related abilities, or that it exacerbated the effects of her other impairments. *See Obesity Ruling*, 2000 WL 628049, at *4 (explaining that obesity will be considered a "severe" impairment when "alone, or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities"). Moreover, even assuming that the ALJ erred in not finding her obesity to be a severe impairment, Brown has not demonstrated that she has suffered prejudice. An ALJ must consider both severe and non-severe impairments in assessing RFC, and, as will be discussed below, the ALJ factored Brown's obesity into his RFC determination. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (reasoning that legal error regarding whether claimant's obesity was severe impairment would not by itself prejudice her).

3

The ALJ's RFC determination relies largely on his evaluation of the credibility of Brown's testimony regarding her pain, in light of the objective medical evidence, and on a "Physical Residual Functional Capacity Assessment" report prepared by a state agency medical consultant ("PRFCA report") on January 25, 2006.[3] Regarding Brown's exertional limitations, the PRFCA report concludes, *inter alia*, that Brown is capable of standing and/or walking for six hours of an eight-hour day. R. 226.

Although the ALJ did not explicitly articulate or rely on any cumulative effects of Brown's obesity, the record indicates that her obesity was factored into the RFC determination. Section I.A.6 of the PRFCA report cites several specific facts on which the state agency medical consultant based his conclusions and that are apparently derived from a physical examination conducted on January 13, 2006. *See* R. 226-27. The facts cited include Brown's height and weight: five-feet, one-inch tall and 220 pounds. R. 227. Thus through the ALJ's adoption of the exertional limitations specified in the PRFCA report, Brown's obesity was factored into his RFC determination. Moreover, an ALJ may properly rely on an RFC

---

[3]Regulations under the Act provide for disability determinations to be made by a qualified "medical consultant" with a state agency. 20 C.F.R. § 404.1616 (2008). The record in this case indicates that the PRFCA report was prepared by a physician with the Texas Division of Disability Determination Services. *See* R. 2.

assessment prepared by a state agency medical consultant, provided it is a function-by-function assessment, like the one here. Such an assessment constitutes substantial evidence, at least where it is not wholly conclusory. *See Zeno v. Barnhart*, 2005 WL 588223, at *9 (E.D. Tex. Feb. 4, 2005) (citing *Onishea v. Barnhart*, 116 Fed. Appx. 1, 2 (5th Cir. 2004) (per curiam)). The PRFCA report is substantial evidence because it cites several specific facts to support its conclusions.[4] *Cf. Celaya v. Halter*, 332 F.3d 1177, 1183-84 (9th Cir. 2003) (holding that state agency medical consultant's PRFCA report did not constitute substantial evidence where it contained only check marks "without comment, rationale, or evident attention to the medical record"); *Browning v. Barnhart*, 2003 WL 1831112, at *7 (E.D. Tex. Feb. 27, 2003) (holding that state agency medical consultant's PRFCA report did not constitute substantial evidence where it cited no facts and gave no justification for its conclusions). Therefore, the ALJ's RFC assessment properly takes into account the effects of Brown's obesity combined with her other impairments.[5] *See Skarbek v.*

---

[4] For example, in addition to Brown's height and weight, the PRFCA report also notes that Brown had "some right knee pain with elevation" but that she had a normal and full range of motion in both knees. R. 227.

[5] Brown offers two additional arguments to support her position that the ALJ's RFC determination is not supported by substantial evidence. First, she points out that no medical expert testified at the hearing regarding her obesity. As part of the ALJ's duty to develop the facts fully and fairly, he should usually consult a medical source statement that describes the effects of the

*Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (noting that claimant's obesity was "factored indirectly into the ALJ's decision" where the ALJ adopted the opinions of doctors who were aware of the claimant's obesity); *Gannon v. Astrue*, 2008 WL 4490738, at *9 (N.D. Tex. Oct. 3, 2008) (Godbey, J.) ("The physicians who provided RFC assessments to the ALJ were aware of Plaintiff's obesity, and any limitations posed by Plaintiff's obesity, therefore, would have been reflected in the physician's RFC assessments.").

---

claimant's impairments on her work-related abilities, rather than conduct his own analysis of the medical evidence on this question. *See Ripley*, 67 F.3d at 557. In the present case, the ALJ relied on the PRFCA report, a medical source statement in the record, for his RFC assessment. Therefore, the lack of a medical expert's testimony regarding obesity does not render the RFC assessment unsupported by substantial evidence. *See Atkins v. Barnhart*, 119 Fed. Appx. 672, 674 (5th Cir. 2005) (per curiam) (holding that failure to use medical expert does not mandate reversal unless claimant shows that ALJ did not fulfill duty to adequately develop the record and that this prejudiced claimant) ("[T]he regulations do not mandate that the ALJ ask for and consider opinions from medical experts[.]").

Brown also notes that no physician reviewed Brown's records after the PRFCA report was completed on January 25, 2006. She does not argue or point to any evidence, however, that indicates that her medical situation had materially changed by the time of the hearing in June 2007. The court notes that Brown testified at the hearing that her weight was 232 pounds, up 12 pounds from the date of the PRFCA report. R. 568. Even assuming *arguendo* that the ALJ erred by not obtaining a medical review of Brown's records after January 2006, she has not shown that such an error would be prejudicial, i.e., that another physician would have concluded that the additional weight prevented her from standing and/or walking for six hours of an eight-hour day. *See Ripley*, F.3d at 557; *Smith*, 962 F. Supp. at 984.

B

1

In deciding whether a claimant can still perform her past relevant work, the ALJ must consider both the demands and duties of a particular past relevant job as the claimant had performed it and as generally required by employers throughout the national economy. A claimant will not be found to be disabled if she can still perform either of these. *Leggett*, 67 F.3d at 564; *Titles II and XVI: Past Relevant Work — The Particular Job or the Occupation As Generally Performed*, SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982).

2

Brown first maintains that she cannot perform her past relevant jobs as a housekeeper or a laundry worker as she had performed them. She posits that her laundry worker jobs were performed at a skilled or semi-skilled level, which is inconsistent with her RFC limitation to simple, repetitive tasks.[6] She notes that in her work history report, submitted as part of her benefits application, she checked boxes indicating that she had used machines, tools, or equipment and technical knowledge or skills on these jobs.

---

[6]Regulations under the Act also classify work according to its required skill level: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568 (2008). Unskilled work, to which Brown is limited, "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 404.1568(a).

Brown further maintains that she is unable to perform her past relevant jobs as they are generally performed in the national economy. For this contention, she relies on the Dictionary of Occupational Titles ("DOT") and posits that none of the laundry-related jobs that the DOT describes are both light and unskilled. Further, she argues that, although the vocational expert ("VE") testified at the hearing that Brown's past relevant jobs of housekeeper and laundry worker are light and unskilled, this testimony is erroneous because it conflicts with the DOT and rests on the "faulty and unreliable" work history report. P. Br. 12. Finally, due to her putative inability to perform laundry work, she argues that she can no longer perform her past housekeeper position because it was actually a composite job with elements of laundry work.

The Commissioner responds that Brown can still perform her past relevant jobs as a housekeeper and a laundry worker both as she had performed them and as they are generally performed in the national economy. He maintains that Brown's past relevant work was unskilled, the VE's testimony is more persuasive than the DOT classifications, and Brown's housekeeper position was not a composite job.

3

The VE testified at the hearing that Brown's past relevant jobs as a housekeeper and a laundry worker were light and

- 13 -

unskilled, and that a person with Brown's RFC could perform them, both as she had performed them and as described in the DOT.[7] R. 578-79. In general, a VE's testimony is substantial evidence on which an ALJ may base a finding that the claimant can still perform her past relevant work. An ALJ "utilizes vocational experts because of their knowledge of job requirements and working conditions." *Pineda v. Astrue*, 289 Fed. Appx. 710, 714 (5th Cir. 2008) (per curiam) (citing *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995)); *see also Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986) (holding that ALJ's finding that claimant could perform other jobs in the national economy lacked substantial evidence where it was based on the DOT alone, without VE testimony).

The court is not persuaded that the VE's testimony should be disregarded as conflicting with the DOT. An ALJ may rely on VE testimony that arguably conflicts with the DOT if there is an adequate basis in the record for doing so. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Here, the description of Brown's past laundry jobs in her work history report supports the VE's testimony. Specifically, she checked boxes indicating that these jobs required her to lift 20 pounds at the most and 10 pounds frequently. R. 78-80. This level of exertion falls squarely

---

[7]By contrast, he also testified that a person with Brown's RFC could not perform her past relevant job as a cafeteria worker because it required exertion at the medium level. R. 579.

within the definition of light work. *See* 20 C.F.R. § 404.1567(b). Moreover, Brown did not cross-examine the VE regarding the putative conflict with the DOT, even though the VE testified that his conclusions were in accord with the DOT. *See Pineda*, 289 Fed. Appx. at 714 (according weight to VE testimony despite alleged conflict with the DOT) ("[C]laimants cannot scan the record for implied conflicts between the specific testimony of [a VE] and the voluminous provisions of the DOT and then present these apparent conflicts as reversible error, at least when as here the claimant's counsel did not explore the supposed conflicts when cross-examining the [VE].").

Further, the VE's testimony should not be disregarded due to reliance on the work history report.[8] Although Brown characterizes the report as faulty and unreliable, she does not explain why. Nor is the reason otherwise apparent from the record. Brown herself provided the information there, and she is presumably a reliable source of the facts regarding the requirements of her past work.[9]

---

[8]The ALJ also relied on the work history report (in addition to the VE's testimony) to conclude that Brown had performed her past work at the light exertional level. *See* R. 28. Brown argues that the ALJ should therefore have found her laundry jobs to be skilled or semi-skilled—based on the boxes she checked to indicate that she had used machines, tools, or equipment and technical knowledge or skills—rather than rely on the VE's testimony. The court rejects this argument because the ALJ is entitled in this context to weigh the evidence, and this court is not permitted to reweigh it. *See Kane*, 731 F.2d at 1219.

[9]The court notes that, at the hearing, Brown testified that the work history report incorrectly stated that she worked at a

Therefore, the VE's testimony constituted substantial evidence for the ALJ's finding that Brown could still perform her past relevant work as a housekeeper and a laundry folder.[10]

        \*    \*    \*

Accordingly, for the reasons explained, the Commissioner's decision is

AFFIRMED.

January 12, 2009.

                                            _____
                                            SIDNEY A. FITZWATER
                                            CHIEF JUDGE

---

particular job in 2006 but that the balance of the information in the report was accurate. R. 564.

[10]Based on this holding, Brown's argument that she can no longer perform her past housekeeper job because it involves laundry work is moot.